UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARLES FULKS,

                Plaintiff,

                                        Case No. 12-CV-14825
vs.                                       HON. GEORGE CARAM STEEH

TOMA JUKA and GREAT AMERICAN
INSURANCE,

                Defendant.

_____/

## OPINION AND ORDER DENYING DEFENDANT JUKA'S MOTION FOR SUMMARY JUDGMENT (DOC. # 36)

### INTRODUCTION

       This is a threshold insurance case stemming from a minor accident between two

semis–a tractor-trailer (driven by defendant Juka) and a tractor (driven by plaintiff).

Plaintiff has apparently reached settlement with defendant Great American Insurance

but has an ongoing dispute with defendant Toma Juka.  Juka has filed a motion for

"summary disposition," asserting there is no question of material fact concerning

whether plaintiff suffered a "serious impairment of a body function," as required for

liability under Michigan's no-fault statute.

### BACKGROUND

       On June 25, 2012, plaintiff was driving a 2003 International Tractor and was the

first vehicle stopped at a red light in the right lane.  Defendant Juka's tractor-trailer was

already at a complete stop at the light in the center lane.  When the light turned green,

Juka attempted a right turn from the center lane, which resulted in his trailer contacting the front left panel of plaintiff's tractor.  Plaintiff alleges that his seatbelt was broken as a result of the impact.

After Dearborn police officers arrived on the scene, a report was created indicating no injury was sustained in the accident.  Plaintiff admits that he told police that he was not injured.  Police indicated that the damage to plaintiff's vehicle was a "1" out of 7.  Plaintiff did not go to the doctor on the day of the accident, but visited Providence Hospital the day after the accident.  Hospital records reflect that plaintiff complained of pain in his upper shoulders and back.

In summary, plaintiff's hospital records reflect mild discomfort in his neck, normal range of motion during his musculoskeletal exam, and a diagnosis of "acute MVA with strains."  He was sent home with pain medicine.  After the hospital visit, plaintiff's attorney referred him to a Dr. Louis Radden, who he alleges he visited 3 to 5 times.  He also went to physical therapy at Med City Rehab three days a week until he returned to work on September 10, 2012.  After that, he went to physical therapy one a week for approximately one month.

Plaintiff had MRIs taken of his left shoulder, lumbar spine, and cervical spine on August 13, 2012.  Dr. Vora reported that plaintiff's left shoulder MRI showed "mild supraspinatus tendinopathy and a tear of the superior labrum."  His lumbar spine MRI was normal, and the cervical spine MRI showed disc bulges at C3/C4, C4/C5, C5/C6, and C6/C7.  Plaintiff visited Dr. Nicholas Dutcheshen approximately two weeks later,

when he had no pain in his shoulder and had full range of motion of both shoulders and "excellent strength" to forward elevation, internal rotation, and external rotation.

On January 18, 2013, plaintiff went to Dr. Antoine Geffrard.  Plaintiff complained of periodic left shoulder and low back pain.  Dr. Geffrard found no "spinous process tenderness," but noted some hypertonicity and tenderness upon palpating the thoracolumbar fascia and paravertebral muscles of the lumbar and lumbosacral area. Dr. Geffrard opined that plaintiff had suffered a regional myofascial strain to the cervical, trapezius and low back regions of his thorax.  Dr. Geffrard found underlying disc and osteopathy in plaintiff's back, and gave his opinion that they were exacerbated by the accident, not caused by it.  Defendant points out that plaintiff admitted at his deposition that he had some back pain prior to the accident, but described his post-accident back pain as "more frequent."

Plaintiff missed eleven weeks of work after the accident and asserted at oral argument that his return to work was "short-lived."  Plaintiff states that he has never done housework inside the house, but used to do yard work, which he claims he can no longer do.  He also asserts he cannot maintain his vegetable garden; lift weights; work on old used cars; fish and hunt with his son; or engage in activities with his six young grandsons like he did prior to the accident.

Defendant Juka filed his motion for summary judgment arguing that plaintiff cannot establish that he suffered a serious impairment of body function under Mich. Comp. Laws Ann. § 500.3135(1), required to maintain this action.  The court's determination on the motion is set forth below.

STANDARD

Federal Rule of Civil Procedure 56(c) empowers the court to render summary

judgment "forthwith if the pleadings, depositions, answers to interrogatories and

admissions on file, together with the affidavits, if any, show that there is no genuine

issue as to any material fact and that the moving party is entitled to judgment as a

matter of law."  See Redding v. St. Eward, 241 F.3d 530, 532 (6th Cir. 2001).  If the

movant establishes by use of the material specified in Rule 56(c) that there is no

genuine issue of material fact and that it is entitled to judgment as a matter of law, the

opposing party must come forward with "specific facts showing that there is a genuine

issue for trial."  First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 270 (1968); see also

McLean v. 988011 Ontario, Ltd., 224 F.3d 797, 800 (6th Cir. 2000).  Mere allegations or

denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla

of evidence supporting the non-moving party.  Anderson, 477 U.S. at 248, 252.  Rather,

there must be evidence on which a jury could reasonably find for the non-movant.

McLean, 224 F.3d at 800 (citing Anderson, 477 U.S. at 252.

DISCUSSION

The Michigan no-fault statute provides that noneconomic damages may be

recovered when a person's injuries pass a certain threshold:

> A person remains subject to tort liability for noneconomic loss caused by
> his or her ownership, maintenance, or use of a motor vehicle only if the
> injured person has suffered death, serious impairment of body function, or
> permanent serious disfigurement.

Mich. Comp. Laws Ann. § 500.3135(1).  In the instant case, plaintiff is arguing only that

he has suffered the serious impairment of a body function.  Defendant cites to

-4-

McCormick v. Carrier, 487 Mich. 180, 195 (2010) for the test applied to establish

whether a plaintiff has satisfied the "serious impairment of body function" requirement

under the statute.  That test has three prongs: (1) an objectively manifested impairment

(2) of an important body function that (3) affects the person's general ability to lead his

or her normal life.  Id.  Defendant acknowledges, for purposes of this motion only, that

the ability to move the back and shoulder are important body functions under prong two,

but asserts that plaintiff's alleged injuries do not meet prongs one and three of the

McCormick test.

Under McCormick, an "objectively manifested impairment" is one that is

"evidenced by actual symptoms or conditions that someone other than the injured

person would observe or perceive as impairing a body function." Id. at 196.  The

McCormick plaintiff satisfied this requirement, because his broken ankle's effect on his

mobility was easily observed.  Defendant asserts that the plaintiff in this case, however,

has no such objectively manifested impairment.

Although the court finds defendant's argument to be compelling, considering the

evidence in the light most favorable to the non-movant, which the court must do for

purposes of this motion, leads the court to conclude that a material question of fact

exists as to whether plaintiff has an objectively manifested impairment.  For instance, as

described above, plaintiff has presented August 2012 MRI results reporting an

"[a]nterosuperior labral tear" and disc bulges at C3/C4, C4/C5, C5/C6, and C6/C7.

Plaintiff also had examination by Dr. Antoine Geffrard in January 2013, following which

Dr. Geffrard diagnosed soft tissue injuries, which would resolve within "two to four

month[s]," but also stated that plaintiff's underlying disc issues and osteopathy were likely exacerbated by the accident.   Plaintiff also asserts that his seatbelt was broken on the impact of the accident, suggesting the force of the impact was significant and logically led to his impairment.   Although there are no third-party documents in the record concerning the broken seatbelt, plaintiff does attest to this fact in his affidavit signed August 21, 2013.   In that affidavit, plaintiff further describes how his life has changed since the accident, noted above by the court.[1]   The court notes that a back and/or shoulder injury is a less observable injury than that of the ankle, as in the McCormick case, and therefore the evidence required to survive this motion is necessarily different.   The court will accept plaintiff's medical evidence as objective manifestation of plaintiff's impairment.

The parties also dispute whether there is a question of material fact as to the third McCormick prong: whether plaintiff's general ability to lead his or her normal life was affected.   In McCormick, the court considered dictionary definitions of the terms in the statute, and concluded that "the plain text of the statute and these definitions demonstrate that the common understanding of to 'affect the person's ability to lead his or her normal life' is to have an influence on some of the person's capacity to live in his or her normal manner of living."   The court further noted that the statute

---

[1]Although defendant asserts this information is inconsistent with that provided in plaintiff's deposition, where he stated that he returned to work as a truck driver two and a half months after the accident, the court does not find the two statements inherently inconsistent.   Moreover, plaintiff's counsel stated at oral argument that the return to work was "short-lived," although the court is not taking this into consideration for the reason that plaintiff has not presented any evidence of this to the court.

merely requires that a person's general ability to lead his or her normal life
has been *affected*, not destroyed.  Thus, courts should consider not only
whether the impairment has led the person to completely cease a pre-
incident activity or lifestyle element, but also whether, although a person is
able to lead his or her pre-incident normal life, the person's general ability
to do so was nonetheless affected.

McCormick, 487 Mich. At 530.  Finally, the court found that there was no

requirement that the impairment be permanent.  Id. at 531.

Accordingly, the court finds that plaintiff's representations and testimony, at

deposition and in his affidavit, satisfy the third McCormick prong.  The court notes such

a determination appears to conform to recent Michigan cases applying McCormick,

such as Smart v. Kowalesky, 2011 WL 5064278 (Mich.App. 2011) (finding the

defendants in a threshold case were not entitled to summary disposition where although

plaintiff returned to work 90 days after the accident, his foot injury affected his ability to

do maintenance around his house, go bowling, and help his brothers on their farms).

Again, while the court has serious questions about the plaintiff's ultimate success on his

claims, considering the facts in a light most favorable to the plaintiff compels the court to

deny defendant's motion for summary judgment at this juncture.

CONCLUSION

For the reasons given above, the court hereby **DENIES** defendant's motion for

summary judgment.

**IT IS SO ORDERED**.

Dated:  November 26, 2013

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
November 26, 2013, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk